IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| COOPER'S STEEL FABRICATORS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  CASE NO. 2:04-cv-408-F ) WO |
| COLASANTI CORPORATION, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cooper's Steel Fabricators, Inc. (hereinafter "Plaintiff") commenced this breach of contract action on April 28, 2004, against defendant Colasanti Corporation (hereinafter "Defendant"). (Doc. # 1, Compl.). On June 1, 2004, Defendant filed an Answer. (Doc. # 4).

This action is presently before the court on Plaintiff's motion for summary judgment (Doc. # 12) and Defendant's motion for summary judgment (Doc. # 14). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court concludes that the motions are due to be DENIED.

### I. FACTS AND PROCEDURAL HISTORY

The disputes in this case arise out of preparations for the construction of a manufacturing facility for Venture Industries in Autauga County, Alabama.[1] The evidentiary submissions of the parties– to wit, the affidavit of David Rzepka, Manager of Commercial

---

[1] Autauga County is located within the Middle District of Alabama.

Operations for Defendant and the affidavit of Gary Cooper, Vice President of Plaintiff–establish the following facts.

*A.     Facts*

In 2003, Defendant agreed to enter into a joint venture to perform work under a letter of intent from Sigma Holdings to construct a new manufacturing facility for Venture Alabama, LLC (hereinafter "Venture"). (Def. Mot. Summ. J., Ex. A, David Rzepka Aff. at ¶¶ 4 & 5).[2] Plaintiff's objective was to be the subcontractor for Defendant whereby Plaintiff would fabricate and supply custom steel construction materials needed for construction of the proposed facility.

In the summer of 2003, Gary Cooper (hereinafter "Cooper") met with David Rzepka (hereinafter "Rzepka") to discuss the proposed construction of the new facility. (Def. Mot. Summ. J., Ex. C, Cooper Aff. at ¶ 2; Pl. Mot. Summ. J., Ex. A. Cooper Aff. at ¶ 2). The meeting occurred at the site which had been selected for the facility in Prattville, Alabama. (*Id.*). During the meeting, Cooper and Rzepka reviewed plans and drawings for the facility, and discussed the need for engineering work and shop or design drawings. (*Id.*). Based on these discussions, Plaintiff employed an engineer, Freeland Harris (hereinafter "Harris") of Freeland Harris Consulting Engineers, to prepare several preliminary drawings. (*Id.*).

On approximately September 3, 2003, Harris and Cooper traveled to Detroit, Michigan to give a presentation and submit a subcontractor bid to Defendant for the

---

[2] Defendant did not have a contract with Venture Alabama, LLC.

2

construction project. (*Id*. at 3). According to Cooper, during the Detroit visit, he and Harris met with three representatives of Defendant's architectural and engineering firm, Albert Kahn & Associates. (*Id*.). Cooper claims that the group discussed at length the necessary changes to Harris' design drawings and the details of the construction project. (*Id*.). Shortly thereafter, Cooper sent Rzepka a letter, dated September 9, 2003, which outlined the terms of payment expected in the event Plaintiff was awarded the subcontractor contract. (*Id*. at Ex. 1). These payment terms included receiving compensation for shop drawings and engineering services. (*Id*.).

The events which occurred thereafter are highly disputed. According to Cooper, two days later, on September 11, 2003, Rzepka called him to notify him that the bid was accepted and Plaintiff was awarded the subcontractor contract. (Cooper Aff. at ¶ 4). Cooper asserts that Rzepka also verbally authorized Plaintiff to proceed with the contract and begin work on the construction project. (*Id*.). Rzepka, however, maintains that he did not authorize Cooper or Plaintiff to proceed with the performance of any work or services relating to the construction project. (Rzepka Aff. at ¶ 11). Rzepka asserts that he specifically told Cooper that Defendant could not give verbal or written direction for Plaintiff to proceed with the performance or procurement of any work or services relating to the construction project. (*Id*. at ¶ 10). Rzepka further asserts that he informed Cooper in a telephone conversation that if Plaintiff proceeded with the procurement of design shop drawings associated with the construction project, it would be doing so on its own. (*Id*.). Notwithstanding, Plaintiff began

3

work on the construction project. (Cooper Aff. at ¶ 4).

In a written memorandum dated September 11, 2003, Rzepka requested clarification from Plaintiff on various issues regarding its alternate proposal. (*Id*. at Ex. 2). This memorandum included a request for clarification of the modifications to be made to Plaintiff's drawings:

> [p]er meeting with Albert Kahn & Associates, [Plaintiff] is proceeding with miscellaneous changes on their drawings and these changes are all inclusive in [Plaintiff's] alternate proposal. . .

(*Id*.). In response, Jeff Hagewood (hereinafter "Hagewood") of Plaintiff sent Rzepka a written letter dated September 17, 2003 wherein he clarified the numerous issues which were included in the alternate proposal. (*Id*.). In relation to Rzepka's inquiry of the modified drawings, Hagewood responded:

> [p]er our meeting with Albert Kahn & Associates, Cooper Steel is proceeding with miscellaneous changes on their drawings and these changes will be evaluated as they are completed and [Defendant] will be notified of any impact these changes have on the scope of work and [Plaintiff's] pricing proposal.

(*Id*.).

According to Cooper, on numerous occasions, Plaintiff obtained shop drawings and engineering services necessary for the fabrication of the custom steel materials needed to complete the construction project. (*Id*. at ¶ 5). Plaintiff then provided these shop drawings to Defendant. (*Id*.). Although Cooper opines "it was communicated and agreed between the parties" that Defendant would compensate Plaintiff for these drawings and services, Rzepka declares that Defendant did not agree to compensate Plaintiff for any services. (Cooper Aff.

4

at ¶ 5; Rzepka Aff. at ¶ 9). Despite this apparent disparity, Plaintiff sent invoices to Defendant requesting payment for the drawings and engineering services. (Cooper Aff., Ex. 3). Rzepka forwarded these invoices to Sigma Holdings for payment. (Rzepka Aff. at ¶ 18). In an e-mail dated October 7, 2003, Rzepka informed Plaintiff that the September request for payment "has been processed and submitted to Sigma Holdings/The Sinacola Group for the Venture Alabama Project." (Cooper Aff., Ex. 4). Rzepka also noted in the e-mail that he was going to "hold [an] invoice and submit [sic] with the October Pay Request." (*Id*.). Defendant however did not receive payment from Sigma Holdings, or any other source, for Plaintiff's invoices. (Rzepka Aff. at ¶ 18).

By letter dated January 7, 2004, Plaintiff requested payment in the amount of $101,921.00 from Defendant for the costs incurred on the construction project. (Cooper Aff., Ex. 5). Despite the request, Defendant has not paid the amount sought by Plaintiff.

*B.   This Lawsuit*

As a result, on April 28, 2004, Plaintiff commenced this civil action against Defendant alleging claims of breach of contract, breach of implied contract, open account, account stated, work and labor done, goods sold and delivered, and promissory estoppel. (Compl.). Plaintiff seeks damages in the amount of $101,921.00, interest, costs, reasonable attorney's fees and expenses.

On February 11, 2005, Plaintiff filed a motion for summary judgment arguing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter

of law. (Doc. # 12, Pl. Mot. Summ. J). On February 16, 2005, Defendant filed a motion for summary judgment arguing that it is entitled to judgment as a matter of law. (Doc. # 14, Def. Mot. Summ. J.). These motions are now fully briefed and ripe for consideration by the court.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).[3] The parties do not contest personal jurisdiction, and the court finds adequate allegations in support of personal jurisdiction.

## III. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

---

[3] Plaintiff is a corporation organized and existing under the laws of the State of Tennessee with its principal place of business in Tennessee. Defendant is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Michigan. According to the Complaint, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00. (Compl. at ¶ 3).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

*A.    Applicable Law*

At the outset, the court notes that the issues in this case must be decided in accordance with Alabama law. When a federal court exercises diversity-of-citizenship jurisdiction, the court is bound to apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of- law rules. *Strochak v. Federal Ins. Co.,* 109 F.3d 717, 719-20 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "The general choice-of-law rule in Alabama is *lex loci contractus*, which provides that 'a contract is governed as to its nature, obligation, and validity by the law of the place where it was made.'" *Kruger Commodities, Inc. v. U.S. Fidelity and Guaranty*, 923 F.Supp. 1474, 1477 (M.D. Ala. 1996) (Thompson, J.) (citations omitted). Because Plaintiff's claims sound in contract, Alabama's choice-of-law rules require this court to apply Alabama law.[4]

*B.    Plaintiff's Claims*

As previously mentioned, Plaintiff brings seven claims against Defendant: breach of contract, breach of implied contract, open account, account stated, work and labor done, goods sold and delivered, and promissory estoppel. Under Alabama law, in order to establish each of these claims, Plaintiff must prove the existence or non-existence of an agreement,

---

[4] The court notes that there is no choice-of-law dispute in this case as both parties argue their respective positions under Alabama law.

8

contract, or meeting of the minds between the parties.[5]  This component is essential to *all* seven claims alleged by Plaintiff in its Complaint and thus is the crux of this lawsuit.

Considering all the affidavits and documents submitted in support of and in opposition to the motions for summary judgment, the court concludes that there is a genuine issue of a material fact as to whether a contract, agreement or meeting of the minds existed between the parties.  The court is mindful that, at the summary judgment stage, its function is not "to

---

[5] Specifically, Plaintiff must establish that an agreement, contract or meeting of the minds existed between the parties to prove its claims of breach of contract, breach of implied contract, open account, account stated, work and labor done, and goods sold and delivered. *See Employees' Benefit Ass'n v. Grissett*, 732 So.2d 968, 975 (Ala. 1998) ("In order to establish that a breach of contract has occurred, a plaintiff must prove: (1) the *existence of a valid contract* binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (internal quotation and citation omitted) (emphasis added);  *Wilson v. Southern Med. Ass'n*, 547 So.2d 510, 513 (Ala. 1989) (explaining that an implied contract "must contain all the elements of an express contract, which rest on consent, and *it is to every intent and purpose an agreement between the parties*, and *cannot be found to exist unless a contract status* is shown") (internal quotations and citations omitted) (emphasis added); *Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co., Inc.*, 608 So.2d 358, 360 (Ala. 1992) ("[I]n order to establish an open account there must be an account based upon running or concurrent dealings, the dealings must not have been closed, settled or stated, and *some term of the contract must remain to be settled between the parties*, or *the agreement* must contemplate further transactions between the parties.") (citation omitted) (emphasis added); *Miller v. Chapman*, 674 So.2d 71, 74 (Ala. 1995) ("To establish a prima facie case of an account stated, a plaintiff must prove that: (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is *a meeting of the minds* as to the correctness of the statement; and (3) the debtor admits liability.") (citation omitted) (emphasis added); *G.S. Gothard and Son Contractors, Inc. v. Mansel,* 611 So.2d 1101, 1103 (Ala. Civ. App. 1992) ("In order to recover for work and labor done, a *contract must exist*, either express or implied.") (citation omitted) (emphasis added); *Pollak v. Winter*, 55 So. 828, 830 (Ala. 1911) (holding that a plaintiff, suing for a claim of goods sold and delivered, "must show, not a contract and its breach, but only that there was at one time *a contract, express or implied*, for the future payment of money, an obligation solvendum in futuro") (emphasis added).  On the other hand, the existence of a contract between the parties may bar Plaintiff's claim of promissory estoppel. *See Davis v. University of Montevallo,* 638 So.2d 754, 758 (Ala. 1994) ("Courts have been reluctant to permit the enforcement, by the application of the doctrine of promissory estoppel, of promises made contemporaneously with a completed contract, evidence of which promises comes within the prohibition of the parol evidence rule.").

weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue [of material fact] for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). With this caveat as its guiding principle, the court finds that, although in some respects this case presents some very close questions,[6] at this juncture of the litigation it cannot conclude that either party is entitled to judgment as a matter of law on any of the claims alleged by Plaintiff. Consequently, the cross motions for summary judgment are due to be denied.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED that the motions for summary judgment (Docs. # 12 & 14) are DENIED.

DONE this 10th day of May, 2005.

                                            /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[6] It is undisputed that there was no written contractual agreement between the parties, thus the main issue before this court is whether a verbal agreement between the parties existed. In his affidavit, Cooper avows that Rzepka "called [him] on [his] cell phone and notified him that Plaintiff's bid was accepted and that Plaintiff was awarded the job as subcontractor." (Cooper Aff. at ¶ 4). Cooper maintains that an agreement existed between Plaintiff and Defendant wherein Defendant would compensate Plaintiff for shop drawings and engineering services. (*Id.* at ¶ 5). Although Rzepka directly refutes Cooper's assertions in his opposing affidavit (Rzepka Aff. at ¶¶ 9, 12), the unrefuted exhibits establish that Plaintiff submitted invoices for payment to Rzepka and that Rzepka sought payment from Sigma Holdings on Plaintiff's behalf. (Cooper Aff., Exs. 1-4). Cooper's testimony coupled with Rzepka's actions of accepting the invoices–without objection–and requesting payment on Plaintiff's behalf support a reasonable inference that an agreement between the parties existed. *See SGB Const. Servs., Inc. v. Ray Sumlin Const. Co., Inc.*, 644 So.2d 892, 895 (Ala. 1994) ("Conduct of one party from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance.") (citation omitted). Nonetheless, in light of the contested facts in this case, the court cannot determine, as a matter of law, whether a contractual agreement existed between Plaintiff and Defendant. Simply put, that issue is due to be determined by a jury.