**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| COOPER'S STEEL FABRICATORS, INC., ) ) ) Plaintiff, ) ) v. ) ) COLASANTI CORPORATION, ) ) Defendant. ) ) | CASE NO.: 2:04-cv-408-F WO |

### ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on May 19, 2005, wherein the following proceedings were held and actions taken:

1. <u>PARTIES AND TRIAL COUNSEL</u>:

   (a) Brenton K. Morris of the law firm of Benton & Centeno, LLP, appeared on behalf of the *Plaintiff, Cooper's Steel Fabricators, Inc. ("Cooper's Steel")*. Cooper's Steel is a Tennessee corporation with its principal place of business in Tennessee, but is duly qualified to do business in the State of Alabama. Cooper's Steel has no parent corporation, no subsidiaries, and no affiliated corporations.

   (b) T. Michael Brown and Jeffrey A. Peters of the law firm of Bradley, Arant, Rose & White, LLP appeared on behalf of the *Defendant, Colasanti Corporation ("Colasanti")*. Colasanti is a corporation organized under the laws of Michigan with its principal place of business in Michigan.

        Colasanti is qualified to do business in Alabama and has engaged in business in Alabama, including the proposed Venture Industries construction project (the "Project") which is made the basis of this lawsuit.

2. <u>JURISDICTION AND VENUE:</u>   The parties have stipulated that:

    (a)    this Court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332 (diversity jurisdiction), as there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000;

    (b)    venue is proper; and

    (c)    this Court may properly exercise personal jurisdiction over Colasanti.

3. <u>PLEADINGS:</u>  The following pleadings and amendments were allowed:

    (a)    Complaint filed by Cooper's Steel; and

    (b)    Answer filed by Colasanti.

No amendments have been filed.

4. <u>CONTENTIONS OF THE PARTIES:</u>

    (a)    The Plaintiff

In September 2003, Cooper's Steel and Colasanti entered into a contract whereby Cooper's Steel agreed to fabricate and supply custom structural steel materials needed for the construction of the proposed Venture Industries facility in Autauga County, Alabama. As part of this contract, Cooper's Steel also agreed to obtain and supply engineering and structural detailing services and drawings that were necessary for the fabrication of such

materials. It was agreed that Cooper's Steel would be compensated for such drawings and services in accordance with payment terms provided by Cooper's Steel and accepted by Colasanti.

Colasanti indicated its acceptance of Cooper's Steel's offer both verbally and through its conduct. Such acceptance is also evidenced by an email signed by David Rzepka of Colasanti and various other documents.

Cooper's Steel, at the request and instruction of Colasanti and in accordance with the contract between the parties, performed work and incurred expenses relating to such drawings and services with the understanding that Cooper's Steel would be compensated for the same. This understanding was based on the promises, assurances, and conduct of Colasanti. Cooper's Steel sent invoices to Colasanti on October 2, 2003 and October 24, 2003 for charges totaling $99,000.00. Colasanti accepted both of those invoices, without objection, and included those invoices in its (Colasanti's) own pay requests to The Sinacola Group, Sigma Holdings, Inc., and/or Sigma Venture Alabama, LLC. Colasanti never questioned the amounts of Cooper's Steel's invoices or indicated to Cooper's Steel that there was a problem with the amounts shown on the invoices prior to the filing of this lawsuit.

On January 7, 2004, Cooper's Steel sent Colasanti a letter containing an itemized statement of account reflecting a total amount due of $101,921.00. This balance included the charges reflected in the two invoices from October, plus additional charges for joist detailing, printing costs, travel, and related overhead. Colasanti included the $101,921.00

figure in its Verified Statement of Lien, which it recorded in Autauga County, Alabama on January 8, 2004.

Colasanti has breached the contract with Cooper's Steel by failing to pay as promised. Cooper's Steel claims Colasanti owes the sum of $101,921.00 as set forth in the letter of January 7, 2004. In addition, pursuant to Alabama Code Section 8-29-6, Cooper's Steel claims pre-judgment interest which has accrued and continues to accrue at the statutory rate of 12% per annum, reasonable attorneys' fees (one third of the amount due or such amount as the Court may deem reasonable), court costs, and reasonable expenses incurred in the course of the litigation. Presently, Cooper's Steel contends it is owed approximately $156,000.

In the alternative to its breach of contract claim, Cooper's Steel contends that these sums are due and owing from Colasanti pursuant to one or more of the following theories of recovery: implied contract, open account, an account stated on or about January 7, 2004, work and labor done, goods sold and delivered, and promissory estoppel. These counts are set forth more fully in the complaint.

(b)   The Defendant

In late summer/early fall 2003 Colasanti Corporation ("Colasanti"), as part of a joint venture, pursued construction of an automotive-supply facility that was under consideration to be built near Prattville, Alabama. Colasanti never received a contract with Venture, or any other entity, for the construction of the proposed facility. Nevertheless, Colasanti decided to take the business risk of proceeding with certain work

4

relating to the project in the hopes that the project would go forward and that Colasanti would ultimately be awarded a contract to serve as construction manager on the proposed project.

Gary Cooper, Vice-President of Cooper's Steel Fabricators, Inc. ("Cooper's Steel"), first became aware of the proposed project through a friend with whom Cooper's Steel was involved on another project in Alabama. Gary Cooper first met with David Rzepka, Manager of Operations of Colasanti, in August of 2003.

In late August of 2003, David Rzepka invited Cooper's Steel to submit a bid on the structural steel portion of the proposed project. Rzepka provided Cooper's Steel with design drawings created by Albert Kahn & Associates ("Kahn"), the architect for the proposed project, from which Cooper's Steel was to prepare its bid. On or about September 2, 2003, Cooper's Steel submitted a proposal for the structural steel portion of the project, based on the design drawings that had already been created by Kahn. Cooper's Steel, like Colasanti, took a business risk and, on its own initiative, also submitted an alternate proposal based on design drawings created by Freeland Harris Consulting Engineers ("Freeland Harris") in hopes of gaining a competitive advantage over other structural steel bidders. Colasanti never requested that Cooper's Steel obtain other design drawings, and Cooper's Steel knew the drawings were not necessary for Cooper's Steel to present its bid on the job. Nonetheless, Cooper requested a meeting with Kahn so that he could show them Freeland Harris's alternate design and hopefully convince Kahn to use the Freeland Harris design. As a means to that end, Cooper offered

5

to fly to Detroit, along with Freeland Harris, to meet with Kahn, and to discuss Cooper's Steel's alternate proposal. Sometime during the first week of September 2003, Cooper's Steel also engaged Nationwide Detailers to perform structural detailing for the proposed project. This too was done without any instructions or requests from anyone at Colasanti, but in recognition that, if the project gained approval and financing, the construction schedule would be extremely short.

Cooper's Steel's actions at this early stage show that, like Colasanti, it was willing to take a financial risk on the hope that the project would go forward, that Colasanti would be awarded the contract, and that Colasanti in turn would award Cooper's Steel the structural steel subcontract on the project.

Sometime during the second week of September, 2003, Cooper and Rzepka had a telephone conversation, wherein they discussed the proposed project and Cooper's Steel's proposal. During this telephone conversation, Rzepka informed Cooper that, while Colasanti was comfortable with Cooper's Steel's bid, it could give Cooper's Steel neither a contract nor authorization to proceed, as Colasanti itself had yet to be awarded a contract and financing for the project was not yet in place. Cooper acknowledged this, but instructed Rzepka not to inform anyone else at Cooper's Steel of this fact, because Cooper wanted his people to remain focused on, and dedicated to, the project.

Sometime before September 30, 2003, Cooper realized that the Cooper's Steel was not likely to ultimately be awarded a subcontract on the project, because it was looking more and more like the financing for the project was not going to go through. Thus,

Cooper's Steel informed Nationwide, in a letter dated September 30, 2003, that Cooper's Steel was placing the project on hold. However, Nationwide continued with its work on the project.

Cooper's Steel submitted two invoices to Colasanti for expenses allegedly incurred by Cooper's Steel on the proposed project. Since Colasanti would be submitting its own requests for payment to the owner, Rzepka agreed to include any expenses claimed by Cooper's Steel with Colasanti's request. This was done in the hopes that the project would ultimately go forward, and that all parties involved, including both Colasanti and Cooper's Steel, would ultimately be awarded a contract on the project. Furthermore, if the owner saw fit to pay Cooper's Steel, despite the fact that Cooper's Steel did not have any agreement in place, Colasanti was not going to stand in the way. Cooper's Steel understood that Colasanti was merely passing along Cooper's Steel's request to the owner, because all parties were well aware that there were no contractual agreements in place.

Unfortunately for both Colasanti and Cooper's Steel, project financing ultimately fell through, Colasanti was not awarded the contract, and in turn Colasanti was unable to award Cooper's Steel a structural steel subcontract for the project. Like Colasanti, Cooper's Steel took a business risk on a project that did not come to fruition. Now, however, unlike Colasanti, Cooper's Steel is attempting to hold someone else responsible for its own costs of doing business.

There is no written agreement between the parties, so the only theory on which

Cooper's Steel can possibly base a claim is breach of an oral agreement. However, there was never any agreement—verbal or written—for Colasanti to pay Cooper's Steel any money whatsoever. To the contrary, Rzepka specifically warned Cooper that any expenses incurred by Cooper's Steel relating to the proposed facility were incurred at Cooper's Steel's own risk.

In light of these facts, Defendant is not liable to Plaintiff for damages on any of the causes of action alleged by Plaintiff. Six of Plaintiff's seven causes of action require either an agreement, a contract, or a meeting of the minds. There simply was never any agreement, contract, or meeting of the minds between the two parties. Thus, Defendant is not liable for damages for breach of agreement, on open account, for account stated, for work and labor done, for goods sold and delivered, or for breach of implied contract.

Defendant is not liable for damages on the grounds of promissory estoppel, because Cooper's Steel was aware that it was incurring expenses at its own risk.

Defendant also contends that it is not liable under Alabama Code Section 8-29-6, because Defendant never entered into any agreement with Plaintiff, never agreed to any payment terms, never received payment from the owner, and never agreed to any date for payment.

Defendant also contests the amount of damages claimed by the Plaintiff, even if the Court determines that some agreement existed between the parties.

5.      STIPULATIONS BY AND BETWEEN THE PARTIES:

    (a)      In 2003, Colasanti Corporation ("Colasanti") entered into a joint venture with Doster Construction Company, Inc. ("Doster") to perform work in Autauga County, Alabama.

    (b)      On August 7, 2003, this Colasanti-Doster joint venture signed a letter of intent with Venture Alabama, LLC and/or related entities to construct a new manufacturing facility for Venture Industries Corporation ("Venture").

    (c)      David Rzepka is, and at all times pertinent to this lawsuit has been, the Manager of Commercial Operations for Colasanti.

    (d)      Gary Cooper is, and at all times pertinent to this lawsuit has been, the Vice President of Cooper's Steel.

    (e)      In August of 2003, Gary Cooper and David Rzepka met for the first time at Doster's office in Birmingham and discussed the proposed construction project.

    (f)      Later that same month, David Rzepka and Gary Cooper met in Prattville, Alabama at the site that had been selected for the proposed facility.

    (g)      During this second meeting, Rzepka and Cooper reviewed preliminary plans and drawings for the proposed facility.

    (h)      Some preliminary design drawings had already been prepared by Albert Kahn & Associates ("Kahn").

(i)     In late August of 2003, Colasanti provided Cooper's Steel with the scope of work for the structural steel portion of the project to be used by Cooper's Steel in preparing a bid or proposal to Colasanti for that portion of the project.

(j)     Some time during August of 2003, Cooper's Steel asked an engineer, Freeland Harris of Freeland Harris Consulting Engineers ("Harris"), to prepare several preliminary drawings.

(k)     Exhibit 9 is a true and correct copy of an e-mail from Mike Branch to David Rzepka dated August 27, 2003.

(l)     On or about September 3, 2003, Cooper's Steel submitted two proposals to Colasanti for the structural steel portion of the Venture project; these proposals are referred to as the proposal and the alternate proposal and are evidenced by Exhibits 13 and 14, respectively.

(m)     On or about September 8, 2003, Gary Cooper and Freeland Harris met with representatives from Kahn in Detroit.

(n)     Although he was not present, David Rzepka participated in arranging the meeting in Detroit.

(o)     After the September 8 meeting in Detroit, David Rzepka was informed that Cooper's Steel's alternate proposal would be acceptable to the owner.

(p) On September 9, 2003, Cooper's Steel faxed a letter to Colasanti that outlined the terms of payment expected in the event Cooper's Steel was awarded the subcontract for the structural steel portion of the project.

(q) Exhibits 18 and 19 are true and correct copies of a letter from Cooper's Steel that was received by Colasanti, via fax, at its Prattville office on September 9, 2003 and faxed from the Prattville office to Colasanti's main office in Michigan.

(r) On September 10, 2003, David Rzepka met with representatives of Kahn and The Sinacola Group at the project site and discussed Cooper's Steel's alternate proposal and proposed payment terms.

(s) As of the time of this meeting, Colasanti had not accepted Cooper's Steel's bid or given Cooper's Steel authorization to proceed with work relating to the facility.

(t) Sometime thereafter, during the first half of September of 2003, David Rzepka and Gary Cooper had a telephone conversation, wherein Rzepka and Cooper discussed the project and Cooper's Steel's alternate proposal.

(u) On September 11, 2003, David Rzepka sent a Project Memorandum to Cooper's Steel containing "Miscellaneous Quotations Required." Exhibit 20 is a true and correct copy of this Project Memorandum.

(v)   Jeff Hagewood of Cooper's Steel sent a letter dated September 17, 2003 in response to the "Miscellaneous Quotations Required Memorandum" dated September 11, 2003. Exhibit 24 is a true and correct copy of that letter.

(w)   As evidenced by Exhibit 26, on several occasions beginning on or about September 12, 2003 and continuing through about September 26, 2003, Cooper's Steel sent drawings to Colasanti.

(x)   On several occasions beginning on or about September 15, 2003 and continuing through about September 29, 2003, Colasanti forwarded drawings and submittals received from Cooper's Steel to Kahn and forwarded Kahn's responses to Cooper's Steel.

(y)   On September 23, 2003, Colasanti sent Cooper's Steel's shop drawings to Kahn.

(z)   On September 25, 2003, Colasanti sent Cooper's Steel's shop drawings to Kahn.

(aa)  On September 29, 2003, Colasanti sent Cooper's Steel's shop drawings to Kahn.

(bb)  Exhibit 60 is a true and correct copy of a letter dated September 30, 2003 from Cooper's Steel to Nationwide Detailers.

(cc)  Cooper's Steel sent a letter dated September 30, 2003 to Freeland Harris Consulting Engineers. The document bates labeled "CS0163" is a true and correct copy of that letter.

(dd)   On October 2, 2003, Cooper's Steel sent David Rzepka, via electronic mail, an invoice dated October 2, 2003 for engineering services for design documents in the amount of $55,000. Exhibit 31 is a true and correct copy of this invoice.

(ee)   David Rzepka acknowledged receipt of Cooper's Steel's October 2, 2003 invoice and stated in a reply e-mail that the invoice would be included in Colasanti's October Pay Request to Sigma Holdings/The Sinacola Group for the Venture Alabama Project.

(ff)   Exhibit 30 is a true and correct copy of an email from David Rzepka to Candy Darnell at Cooper's Steel.

(gg)   Freeland Harris Consulting Engineers submitted an invoice, dated October 13, 2003, relating to the project to Cooper's Steel in the amount of $50,000. Exhibit 33 is a true and correct copy of this invoice.

(hh)   Cooper's Steel sent David Rzepka an invoice, dated October 24, 2003, for structural detailing services for shop drawings in the amount of $44,000. Exhibit 32 is a true and correct copy of this invoice.

(ii)   Exhibit 62 is a true and correct copy of a document produced by Cooper's Steel.

(jj)   Nationwide Detailers, Inc. sent invoices to Cooper's Steel dated September 22, 2003; October 15, 2003; and October 20, 2003. Exhibit 35 is a

composite exhibit that contains all three of these invoices from Nationwide Detailers, Inc. to Cooper's Steel. These three invoices total $40,000.

(kk) Exhibit 63 is a composite Exhibit consisting of true and accurate copies of documents produced by Cooper's Steel.

(ll) Colasanti sent an invoice to Sigma Venture Alabama LLC, bearing Invoice No. 5512, dated October 31, 2003, requesting payment of various sums which included the amounts set forth in Cooper's Steel's invoices.

(mm) Exhibit 38 is a true and correct copy of Colasanti's October 2003 pay request to Sigma Venture Alabama LLC.

(nn) Jeff Hagewood of Cooper's Steel sent a letter dated January 7, 2004 to David Rzepka of Colasanti, requesting that Colasanti issue payment to Cooper's Steel in the amount of $101,921.00.

(oo) Colasanti included the sum of $101,921.00 in a Statement of Lien that was recorded on behalf of Colasanti in the Autauga County Probate Court on January 8, 2004.

It is ORDERED that:

(1) The non-jury trial of this cause, which is to last two days, is set for June 30, 2005, at 9:00 a.m. at the federal courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately three weeks prior to the start of the trial term;

(3) The plaintiff is **required** to file proposed findings of fact and conclusions of

law by June 23, 2005. The defendant is **required** to file proposed findings of fact and conclusions of law by June 23, 2005. The parties are **also directed** to e:mail their proposed findings of fact and conclusions of law to *propord_fuller@almd.uscourts.gov* in WordPerfect format by the dates specified above.

  (4) The parties in this case are **not required** to file trial briefs. However, if they wish to do so, their trial briefs shall be filed no later than June 23, 2005.

  (5) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), **three copies** of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, and the judge to each have a set of the exhibits;

  (6) All deadlines not otherwise effected by this order will remain as set forth in the Uniform Scheduling Order (Doc. # 10) entered by the court on July 21, 2004;

  (7) All understandings, agreements, deadlines, and stipulations contained in this Pretrial Order shall be binding on all parties unless this Order be hereafter modified by Order of the Court.

  DONE this 23rd day of May, 2005.

              /s/ Mark E. Fuller
              CHIEF UNITED STATES DISTRICT JUDGE